## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **LATAWNYA BROWN,**<br><br>                **Plaintiff,**<br><br>        **v.**<br><br>**WELLS FARGO BANK, N.A.,**<br><br>                **Defendant.** | **Civil Action 11-1156 (BJR)** |

## MEMORANDUM OPINION
### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Latawnya Brown ("Brown") brings suit against Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank"), alleging that World Savings Bank ("World") committed fraud and violated the District of Columbia Consumer Protection Procedures Act ("CPPA") during the process of refinancing a loan she obtained from World.  Wells Fargo, the successor to World as a result of a series of corporate mergers, moves to dismiss Brown's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims are preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461 *et. seq.* ("HOLA" or "the Act"), and that two of her counts are precluded by a class-action settlement agreement with certain defendants, including World. Upon consideration of the motion, the opposition thereto, and the record of the case, the Court concludes that Wells Fargo's motion should be granted in part and denied in part.[1]

---

[1]        The Court finds this motion appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78.

## I.  BACKGROUND

In late 2006, Brown sought a mortgage from World Savings Bank to refinance a property in Washington, D.C.  Compl. ¶ 13; Ex. B at 1, 3.  On January 3, 2007, Brown entered into an Option Adjustable Rate Mortgage ("ARM") loan agreement, which is also known as a "Pick-A-Pay" loan because the borrower can choose from several payment options.[2]  *Id.* ¶¶ 31–32.  The original balance of the loan was $750,000.  *Id.* ¶12.  Brown avers that Wells Fargo falsified the loan documents by overstating her income and assets.  She also claims that Wells Fargo put her in a coercive situation by not allowing her time to review the documents at closing.  *Id.* ¶¶ 109–10.  Brown further alleges that Wells Fargo failed to disclose the actual payment amounts and interest rate which she would owe, as well as the fact that the actual amount and rates would cause negative amortization.  *Id.* ¶¶ 97–98.  She goes on to claim that the entire Pick-A-Pay product is illegal.  In addition to common law claims, she asserts violations of the CPPA.

Wells Fargo moves to dismiss all of Brown's claims, arguing that they are preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461 and that the class action settlement in *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg.and Sales Practices Litig.*, 2011 WL 1877630 (N.D. Cal. May 17, 2011) precludes Brown's assertion of Counts I and III of the complaint, which allege fraud and CPPA violations.[3]  In response, Brown contends that her

---

[2]     As described in Brown's complaint, borrowers can choose from four different levels of repayment.  The highest payment pays the mortgage in full before the maturity date, the second highest pays the mortgage by the maturity date, the third highest payment is interest-only, and the lowest is a deferred interest payment.  Compl. ¶ 32.  If a borrower chooses the lowest payment, the unpaid interest is added to the principal amount due, which also increases the amount due every month.  *Id.*

[3]     As discussed further below, the Court does not organize its analysis of Brown's claims by the poorly-articulated counts asserted in the complaint.

claims are not subject to preemption or claim preclusion.[4]  The Court concludes that, while

defendant is correct as to most of Brown's complaint, certain claims should survive its motion to

dismiss.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(6), a defendant may move to dismiss a

complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Here, Wells Fargo does

not argue that Brown has failed to state a claim for fraud or violations of the CPPA.  Instead, it

advances the alternatively plead defenses of preemption and claim preclusion.  Defendants bear

the burden of proving their elements.  *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)

(concluding that defendants bear the burden of proving claim preclusion); *see also* 5 Charles

Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1277 (3d ed. 2004); *Cf. Adair*

*v. Sherman*, 230 F.2d 890, 894 (7th Cir. 2000).  With these standards in mind, the Court assesses

the merits of defendant's defenses against Brown's allegations.

---

[4]       Brown asserts that both preemption and claim preclusion (or res judicata) are
affirmative defenses and therefore not proper grounds for a motion to dismiss under Federal Rule
of Civil Procedure 12(b)(6).  As Wells Fargo argues, she is incorrect.  A defendant may raise the
affirmative defense of federal preemption over state law claims as grounds for a motion to
dismiss under Rule 12(b)(6) where the face of the complaint clearly demonstrates facts giving
rise to the defense.  *Smith-Haynie v. District of Columbia,* 155 F.3d 575, 578 (D.C. Cir. 1998);
*Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (affirming the trial court's
dismissal of state law claims based on a showing of ERISA preemption); *Olivo v. Elky*, 646 F.
Supp. 2d 95, 98–99 (D.D.C. 2009).  Similarly, claim preclusion must be "affirmatively state[d]"
in a responsive pleading.  Fed. R. Civ. P. 8(c).

### III. ANALYSIS

**A.     HOLA Preempts Portions of Brown's Complaint**

Wells Fargo first argues that it is entitled to dismissal of Brown's claims because they are preempted by HOLA.  Brown disagrees, contending that HOLA's preemptive reach does not encompass her claims.  The Court agrees in part with both parties.  Before parsing though each of Brown's poorly-articulated claims, the Court first establishes the preemptive reach of HOLA.

**1.     Preemption Under HOLA**

A product of the Great Depression, HOLA was passed in 1933 and "provided for the creation of a system of federal savings and loan associations . . . to ensure their vitality as permanent associations to promote the thrift of the people in a cooperative manner, to finance their homes and the homes of their neighbors."  *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159–60 (1982) (internal quotation marks omitted).  It also sought "to provide emergency relief with respect to home mortgage indebtedness" as a "radical and comprehensive response to the inadequacies of the existing state systems."  *Id*.  Under HOLA, the Treasury Department's Office of Thrift Supervision ("OTS") had "plenary authority to issue regulations governing federal savings and loans."  *Id.* at 160; *see also Sec. Sav. & Loan Ass'n v. Director, Office of Thrift Supervision*, 960 F.2d 1318, 1321 n.8 (5th Cir. 1992).[5]  Pursuant to the Act, the

---

[5]     The preemption landscape was altered significantly on July 21, 2011 when the Dodd-Frank Wall Street Reform and Consumer Protection Act was passed.  *Poindexter v. Wachovia Mort. Corp*., 2012 WL 1071248, at *3 n.9 (D.D.C. Mar. 30, 2012).  The Act provides that HOLA does *not* occupy the field in any area of state law and that preemption is governed by the standards applicable to national banks.  12 U.S.C. § 1465(a), (b); *see Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996) (conflict preemption applies to national banks).  It also merged the OTS into the Office of the Comptroller of the Currency ("OCC"), which issued an Interim Final Rule that changes the preemption regulations.  *See* 76 Fed. Reg. 48950 (Aug. 9, 2011).  Section 150.136 established a new preemption regulation, superseding 12 C.F.R. § 560.2.  Because the Act was passed after plaintiff received the loan at issue, the changes are not relevant

Director of OTS has broad authority to promulgate regulations regarding federal savings

associations. *See* 12 U.S.C. §§ 1463(a), 1464(a). These regulations preempt state law. *Fidelity*,

458 U.S. at 161–62 ("Congress expressly contemplated, and approved, [OTS'] promulgation of

regulations superseding state law."). One such regulation, 12 C.F.R. § 560.2(a), provided that

OTS "occupied the field" of lending regulation.[6]

---

to the issues before the Court. Regulations, like statutes, cannot be applied retroactively absent express direction from Congress. *See Davis v. World Savings Bank, F.S.B.*, 806 F. Supp. 2d 159, 166 n.5 (D.D.C. 2011) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). Congress did not direct retroactive application of § 150.136, and the Dodd–Frank Act provided that the governing section of the statute (§ 1465 of Title 12) was enacted and amended effective on the transfer date, i.e. July 21, 2011. *See* P.L. 111–203, 124 Stat. 2017, §§ 1046, 1047(b), 1048. *Id.* Therefore, § 560.2 governs in this case because it was the regulation in effect when the parties entered into the Pick–a–Pay mortgage loan transaction.

[6]     In relevant part, § 560.2(a) provides:

Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), *OTS hereby occupies the entire field of lending regulation for federal savings associations*. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

Section 560.2(b) provides "[i]llustrative examples" of the types of laws HOLA preempts.

12 C.F.R. § 560.2(b).  In parts relevant to the case before the Court, it lists "the types of state

laws preempted by paragraph (a) of this section."  *Id.*  These include, "without limitation, state

laws purporting to impose requirements regarding:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees; . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;. . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> (11) Disbursements and repayments[.]

*Id.*

In the next section of the governing regulation, § 560.2(c) lists the types of state laws

that are *not* preempted "to the extent that they only incidentally affect the lending operations of

federal savings associations or are otherwise consistent with the purposes of paragraph (a) of

[§ 560.2]."  12 C.F.R. § 560.2(c).  Those relevant to this case include contract, commercial, and

tort law as well any other state law that OTS finds "(i) Furthers a vital state interest; and (ii)

---

12 C.F.R. § 560.2(a) (emphasis added).

Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in [12 C.F.R. 560.2(a)]." *Id.*[7]

To aid navigation of this three-tiered test, OTS provided guidance on how a challenged law should be analyzed for preemption. The agency instructs:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. 50951–01, 50966–67 (Sept. 30, 1996).

In other words, if the law at issue in plaintiff's claim falls into one of the categories enumerated in § 560.2 (a), then it is preempted. If it does not fall into one of the enumerated categories but affects lending, a presumption of preemption arises that is reversed only if the law fits within the confines of § 560.2(c). In turn, § 560.2(c) excepts from preemption listed state laws that only incidentally affect the lending operations of federal savings associations or are otherwise consistent with the purposes of paragraph (a).

**2.      Brown's Claims and HOLA**

Within this framework, Wells Fargo argues that Brown's common-law fraud claims fall under several of the enumerated examples in § 560.2(b), specifically (4), (5), (9), (10), and (11), and outside the narrow exceptions in § 560.2(c). As well, the Bank contends that Brown's

---

[7]      Other exempted state laws include real property law, certain homestead laws, and criminal law.

CPPA claims are also preempted under § 560.2(b).  In response, Brown argues that HOLA does not preempt her claims because they are based on laws of general applicability that only incidentally affect regulated lending activities.[8]  After carefully parsing Brown's claims, the Court concludes that Wells Fargo has the better argument with respect to most of Brown's claims, but that certain allegations are not preempted.

All courts of appeals that have addressed this question have effectively conducted an "as applied" analysis, consistent with OTS's approach that "a state law that *on its face* is not one described in § 560.2(b) may nevertheless be preempted if, *as applied*, it fits within § 560.2(b)." *Casey*, 583 F.3d at 593–95.  The Ninth Circuit held that, under § 560.2(b), HOLA preempted a class claim brought under the California Unfair Competition Law.  In that case, mortgage applicants alleged that defendant savings and loan association violated the law when they required clients to pay a lock-in deposit for a mortgage and did not return the fee after applications were cancelled.[9]  *See Silvas v. E*Trade Mort. Corp*., 514 F.3d 1001 (9th Cir. 2008). The Eighth Circuit deemed preempted mortgagors' allegation that the mortgagee violated Missouri law when it charged a fee for preparation of loan documents by nonlawyers.  *Casey*, 583 F.3d at 595.  The Seventh Circuit, on the other hand, ruled that HOLA does not necessarily

---

[8]      Brown also argues that HOLA preemption is not applicable to Wells Fargo because it is a subsequent assignee to the original lender, Landmark Funding, LLC.  Compl. Ex. B at 1.  This argument is belied by both the Note itself and the allegations in Brown's complaint. The Adjustable Rate Mortgage Note itself provides that "[t]he lender is WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred."  Compl. Ex. A at 1.  In addition, Brown alleges that "Wells Fargo is the present form of World Savings Bank, which originated, approved, and funded Plaintiff's mortgage."  Compl. ¶11.  Accordingly, the Court rejects Brown's argument as to HOLA's applicability in this case.

[9]      The D.C. Circuit has yet to address the HOLA preemption issue.  Other circuit courts have taken different approaches to HOLA preemption.

preempt state law claims and that mortgagor's claims of fraud were not preempted.  *In re Ocwen Loan Servicing, LLC, Mort. Servicing Litig.*, 491 F.3d 638 (7th Cir. 2007).[10]

Against this backdrop, Wells Fargo urges the Court to adopt the test applied in other courts in this district.  In particular, it points to *Davis v. World Savings Bank, F.S.B.*  (a case decided while this motion was pending and examined thoroughly in defendant's reply brief) in which the court found preemption of claims that plaintiff's loan was a fixed rate loan when it was actually an adjustable rate loan with a negative amortization feature.  *See Davis v. World Savings Bank, F.S.B.*, 806 F. Supp. 2d 159, 171 (D.D.C. 2011).  Adopting the test set forth in *Down v. Flagstar Bank, F.S.B*, the *Davis* court found that "a close reading of the Complaint and the Note reveals that all of the common law claims raised are inextricably linked to the loan transaction and the documents related to the loan."  *Id.* at 172 (citing *Down v. Flagstar Bank, F.S.B.*, 2011 WL 1326961, *6 (E.D. Va. Apr. 4, 2011)).  As well, it concluded that because the plaintiff's claims were "based on the loan transaction and grounded in the loan documents" and "because the common law claims cannot be removed from the loan transaction, they are preempted by the federal regulations that govern the loan transaction."[11]  *Id.*  Accordingly, the court concluded that HOLA preempted the plaintiff's allegations.

---

[10]     The agency's approach is entitled to deference.  *Casey*, 583 F.3d 594–95, citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  "Federal regulations have no less pre-emptive effect than federal statutes."  *Fidelity*, 458 U.S. at 153.  As well, "a pre-emptive regulation's force does not depend on express congressional authorization to displace state law."  *Id.* at 154.

[11]     As well, the *Davis* court went on to note that even if the claims were not preempted under § 560.2(b), "in these circumstances where the allegations are inextricably linked to the loan transaction, Mr. Davis cannot demonstrate that his claims have only an incidental affect on lending operations" and are therefore not saved by § 560.2(c).  *Davis*, 806 F. Supp. 2d at 173.

This Court declines to adopt the preemption rule that the *Davis* and *Down* courts establish. A test that blocks a claim based on a transaction that is "inextricably linked" to the loan or is "based on the loan transaction and grounded in the loan documents" is overly broad and inconsistent with the regulation. By its terms, § 560.2(b) looks to whether or not the state law is "purporting to impose requirements" such as disclosure parameters or loan-to-ratio ranges or other expressly listed loan characteristics. 12 C.F.R. § 560.2(b). If it does not, then the regulation requires courts to examine the *effects* of the claim on the federal regulatory scheme, not the claims' relation (extricable or otherwise) to the loan transaction at issue in the case. *See id.* Indeed, such a broad, preemptive scope swallows all § 560.2(c) exceptions. Most (if not all) torts and contractual breaches stemming from a loan transaction or document are "linked," often inextricably, to the loan. They are undoubtedly "based on loan transactions" and often on "loan documents" as well. *Cf. Reyes v. Downey Savings and Loan Ass'n*, *F.A.*, 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008) ("[A] law against breach of contract will not be preempted just because the contract relates to loan activity."). As evidenced by the express § 560.2(c) list, OTS intended to preserve state causes of action, in so far as they do not affect lending institutions. Thus, the Court rejects the *Davis* and *Downs* test and applies a narrower preemption rule that other courts have employed in HOLA cases.

Specifically, the Court finds persuasive the reasoning underpinning the Seventh Circuit's holding in *Ocwen* and the holding of district courts applying its logic and methodology. *See Ocwen*, 491 F.3d at 643–44; *Chang v. Wachovia*, 2011 WL 2940717, at *7 (N.D. Cal. Jul. 21, 2011). Writing for the *Ocwen* court, Judge Posner concluded that "OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loans associations of their basic state common-law-type remedies." *See Ocwen*, 491 F.3d at

643–44.  It observed that OTS cannot provide a remedy to persons injured by wrongful acts of savings and loan associations, and furthermore HOLA creates no private right to sue to enforce the provisions of the statute or the OTS's regulations."  *Id*. at 643–44 (citing *Burns Int'l Inc. v. Western Savings & Loan Ass'n,* 978 F.2d 533, 535–37 (9th Cir. 1992).  Thus, reasoned the court, HOLA was not intended to occupy the entire remedial field.  To illustrate this point, Judge Posner provided two examples of state law claims that would not be preempted:

> [S]uppose a[] [Savings and Loan] signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract.  Or if the mortgagee (or a servicer like *Ocwen*) fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud.

> *Id.*

The Court agrees with the Seventh Circuit that preemption depends on the nature and effects of the claims alleged, *see e.g. Thomas v. OneWest Bank, F.S.B.*, 2011 WL 867880 (D. Or. Mar. 10, 2011) (finding that fraud claim was preempted and breach of contract claim was not), and that a careful analysis is required of each claim even if the complaint is a "hideous sprawling mess," and "difficult and in many instances impossible to ascertain the nature of the charges." *Id.* at 641.  Applying this test and methodology to Brown's claim, the Court finds the complaint preempted in large part.  However, certain claims withstand Wells Fargo's defenses.  In examining the allegations, the Court reviews the facts alleged rather than Brown's haphazard and redundant counts.

**B.**    **Brown's Allegations of Misrepresentation of Her Income and Assets Are Not Preempted**

11

Brown alleges that Wells Fargo inflated her income and assets in the loan application.[12]
Wells Fargo claims that § 560.2(b)(9) preempts these allegations.  Compl. ¶¶ 16–18.  Citing 12
C.F.R. § 560.2(b), the Bank argues that because HOLA encompasses state laws purporting to
impose requirements regarding "[d]isclosure and advertising, including laws requiring specific
statements, information, or other content to be included in credit application forms, credit
solicitations, billing statements, credit contracts, or other credit-related documents and laws
requiring creditors to supply copies of credit reports to borrowers or applicants," Brown's
allegations are foreclosed.  Brown rejoins that her allegations are not preempted because they do
not seek to impose new regulations and only incidentally affect lending because they are
consistent with general commercial, contract and tort law.  Brown is correct.

An allegation of affirmative misrepresentation of a material fact is distinct from a failure
to disclose claim.  It asserts that an untruthful action was taken — in this case, entry of incorrect
assets and income on a loan application.  Thus, Brown's allegations cannot be read to fall within
§ 560.2(a)'s scope of laws that "purport[] to impose requirements" regarding disclosures made
during the mortgage lending process, as the defendant maintains.  Proceeding to the second step
of the analysis, the Court finds that such a claim does not "affect lending" in a general sense.
Common law fraud and misrepresentation claims offer a private cause of action against lenders
who misrepresent material facts.  In so doing, such claims affect lending insofar as they deter
and sanction *fraudulent* lending.  An interpretation of HOLA that bars such claims is not

---

[12]     It is unclear whether Brown's claims sound in contract or in tort.  However, this
difference is of no moment at this stage in the litigation and in light of defendant's preemption
and claim preclusion challenges which do not test the sufficiency of the claims' element.  *See
Coffman v. Bank of America,* 2010 WL 3069905, at *10  (D.D.C. Aug. 4, 2010); *Cf. Ocwen,* 491
F.3d at 643–46.

reasonable or consistent with § 560.2(c).[13]   Proceeding to step three, the Court finds that Brown's

affirmative misrepresentation claims fit within the confines of the types of laws enumerated in

§ 560.2(c) (commercial, contract or tort law) and "has only an incidental effect on lending

operations."   Allowing Brown to prevail on such a claim would not change the regulatory

landscape; rather, it would merely provide a means of redress for an alleged misdeed in this

particular case.   As the *Chang* court stated, "the only 'requirement' these [fraud, intentional tort,

promissory estoppel, and breach of the implied covenant of good faith and fair dealing] claims

impose on lending institutions is that they be held responsible for the statements they make to

their borrowers.   If these causes of action were preempted, federal savings associations would be

free to lie to their customers with impunity."   *Chang*, 2011 WL 2940717, at *5.   The Court

agrees with the *Chang* and *Ocwen* courts that such an outcome is not consistent with HOLA or

preemption principles and that mortgagors are entitled to redress for such violations.   Thus,

Brown's claim of Wells Fargo's affirmative misrepresentation of Brown's income and assets is

not preempted.   This conclusion is consistent with holdings in similar cases in which affirmative

misrepresentations were asserted.   *See, e.g.*, *Haggarty v. Wells Fargo Bank, N.A.*, 2011 WL

445183, *16 (N.D. Cal. Feb. 2, 2011) (contract claim not preempted "because the breach of

contract claim uses state law only as a mechanism to enforce the parties' agreement, not as an

independent basis for the imposition or new or different obligations on Wells Fargo"); *Davis v.

Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1086 (C.D. Cal. 2009) (holding breach of

---

[13]     Indeed, as suggested above, to interpret HOLA otherwise would render §
560.2(c) a null set.  Put another away: if common law affirmative misrepresentation is not saved
under the tort, contract or commercial law subsections of that provision, then what is?  Brown
alleges that Wells Fargo misstated a material fact of her income and assets.  Such behavior
cannot be permissible under any regulatory scheme.

contract claim not preempted; noting that such a claim would "have at most an incidental effect on the exercise of Chase's lending powers . . . [because s]uch a claim does not seek to force Chase to set its contracts in a certain way, but rather merely to adhere to the contracts it does create.").

In addition, Wells Fargo is not entitled to an affirmative defense against Brown's corresponding causes of action under the CPPA. As the Seventh Circuit noted in *Ocwen*, "[n]ot all state statutes that might be invoked against a federal S & L are preempted, any more than all common law doctrines. This is because such laws are listed in 560(c)." *Ocwen*, 491 F.3d at 646. Therefore, the claims of violations of the CPPA as to affirmative misrepresentations are not preempted. These include claims asserted under section 3904(e) of the Act, which provides that "[i]t shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to . . . misrepresent as to a material fact which has a tendency to mislead." D.C. Code § 28-3904(e).

To be sure, a different result would be required if these common law or CPPA causes of action acted as a back door to impose requirements outside of the fraud claim at issue that would more than incidentally impact lending operations.[14] As well, if the state law purported to define

---

[14]    Brown's contention that her misrepresentation and fraud claims are saved by virtue of the type of law under which she asserting them — namely, laws of general application to all businesses — misses the mark. Under the "as applied" approach to the preemption analysis that most courts, include this one, have adopted, plaintiffs may not save their claims from preemption by merely asserting them under certain types of laws whose general purpose or affect are something other than lending or mortgage regulation. Instead, the relevant question is what the *effect* the rule applied in the instant lawsuit will have on the applicable regulatory field, which the OTS occupied until recently. Whether the claim derives from a common law cause of action or a consumer protection statute is of no moment under this rubric. *Ocwen*, 491 F.3d at 644. Therefore, the Court examines closely the nature of each claim and, as Judge Posner determined, whether the effect is on the common law or regulatory side of the ledger. *Id*. Contrary to Brown's assertions, the tests employed by most other district courts that found no

14

precise disclosure requirements, preemption would be required.  But this is not the case for this

particular set of claims, where the plaintiff is alleging *affirmative* misrepresentations that, in any

context, could state a claim for misrepresentation or fraud.  *Chang*, 2011 WL 2940717, at *6.

Therefore, the Court concludes that because Wells Fargo has not met its burden, it is not entitled

to the defense of preemption as to Brown's claims of affirmative misrepresentation and fraud of

her income and assets.  These include the following paragraphs of the complaint: ¶¶ 2, 12–21,

25–27, 33–36, 52, 111 and the portion of ¶124 that asserts a violation of § 28-3904(e) of the

CPPA.

## C.    Defendant has Demonstrated that All Other Claims are Preempted

In the remainder of her complaint, Brown asserts a raft of allegations, both specific and

general, that touch upon the transaction itself and the legitimacy of the Pick-A-Pay loan system.

First,  Brown alleges, *inter alia*, that Wells Fargo failed to disclose or disclosed in a confusion

manner a wide range of information including the fact that the payment amounts as scheduled

would be insufficient to pay the interest due and would therefore result in negative amortization.

Compl. ¶¶ 97–99.[15]  Second, she maintains that the Bank did not provide her with the loan

---

preemption are not to the contrary.  For example, in both *McAnaney v. Astoria Financial Corp.*,
665 F. Supp. 2d 132 (E.D.N.Y. 2009) and *Baldanzi v. WFC Holdings Corp*, 2008 WL 4924987,
at *3 (S.D.N.Y. Nov. 14, 2008), the courts held that certain common law claims were not
preempted, not simply because they were asserted under common law or consumer protection
laws, but also because the claims sought to challenge defendant's conduct of its business by
general standards and not to impose any limitations on the exercise of its national banking
power.

[15]    Brown argues in her opposition that she "does not allege [in her complaint] that
the disclosures were insufficient. Rather, Brown claims that the disclosures are an intentional
misrepresentation of the essential terms of a subprime loan. Despite what might be defendant's
full technical compliance with the face of the regulations as promulgated by OTS and the
statutes passed by Congress, the contents of the documents completely misrepresented the
financial product for which Plaintiff applied."  Pl.'s Opp'n at 16 n.2.  This assertion is both

application prior to the closing or give her time to review it, allegedly in violation of the CPPA and common law.  *Id*. ¶¶ 109–110.  Third, Brown claims that Wells Fargo maintained inadequate quality control and underwriting guidelines were inadequate so that they could acquire fees through originating and selling Pick-A-Pay loan products to borrowers who did not have the ability to repay the loans.  *Id*. ¶¶ 113–114.  Fourth, Brown alleges that, as a general matter, defendant devised the Pick-A-Pay loan "to defraud and mislead consumers into believing that they could pay both principal and interest with low payments."[16]  In erecting its affirmative defense, Wells Fargo advances the same preemption arguments — namely, that these claims are preempted by § 560.2(a) because they purport to impose additional requirements on lenders and, in any event, affect lending more than incidentally in violation of section § 560.2(c).  Here, the Court finds that the Bank has the better argument and successfully asserts preemption against Brown's claims.

---

inaccurate and revealing.  In numerous instances, the complaint avers that the defendant is liable for failing to disclose information.  For example, as Wells Fargo points out in reply, Brown alleges that "Wells Fargo failed to disclose material facts about the loan, required under consumer protection statutes and common law. . . ."  Compl. ¶ 3.  Plaintiff further alleges that "Wells Fargo failed to clearly and conspicuously disclose to Plaintiff, in Defendant's Option Adjustable Rate Mortgage loan documents, and in the required Truth in Lending Disclosure Statements, accompanying the loan [the following]. . . ."  *Id*. ¶ 54; *see generally*, *id.* ¶¶55–95.  As well, to the extent Brown seeks to sanction behavior with regard to a financial product that is legal under HOLA, she is preempted.

[16]     Brown advances a raft of other sweeping attacks on the ARM loan product.  For example, she claims that due to prepayment penalties, negative amortization, and loss of equity, it would be "nearly impossible for consumers to extricate themselves" from the Option ARM loans.  Compl. ¶ 103.  These assertions may have merit.  As evidenced in numerous other cases filed under the federal Truth In Lending Act ("TILA").  *See, e.g.*, *Hughes v. Abell*, 2012 WL 2054882 (D.D.C. June 7, 2012).  However, in this instance, Brown is preempted from recovering under these state law theories.  As well, the statute of limitations that applies to TILA cases expired before Brown filed her claim.

In opposition to Wells Fargo's motion, Brown attempts to recast her complaints as mere contract claims that seek to enforce generally applicable commercial rules.  The Court agrees with the defendant that this line of argument is entirely unpersuasive.  If allowed to stand, Brown's allegations of insufficient disclosure and ARM illegality would no doubt affect the "[t]he terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan" under § 560.2(b)(4); "[l]oan-related fees, including . . . prepayment penalties" under § 560.2(b)(5); "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in mortgages" under § 560.2(b)(10); and "repayments" under § 560.2(b)(11).  Insofar as Brown is invoking common law or the CPPA to regulate Wells Fargo's lending activity, her claim seeks to regulate conduct for which OTS has occupied the field.  Unlike the claim of *affirmative* misrepresentation during the loan transaction, these portions of the complaint seek to add to disclosure requirements and to make illegal the Pick-a-Pay loan.  While such a prohibition may be desirable from a public policy perspective, the discussion stops here, as HOLA precludes such an examination in this case.  These wide-ranging claims, including any assertion of a "failure to disclose",  are preempted by § 560(a) because they seek to impose new, substantive requirements on lenders that amount to regulatory action. *See Chang*, 2011 WL 2940717, at *7 (disallowing  claims that would "amount to an imposition of new disclosure and notice requirements on federal savings associations.").

**D.      Defendants Have not Demonstrated that the Class Action Settlement Precludes Plaintiff's Claims**

Wells Fargo contends that the class settlement agreement and order entered on May 17,

2011,  *In re Wachovia Corp.*, precludes Counts I and III of Brown's complaint under the

doctrine of claim preclusion.  In support of this affirmative defense, the Bank argues that it has

met all the requirements for claim preclusion under Rule 23 as well as due process.  Specifically,

it maintains that (1) Brown is a member of the class in the "Pick-A-Payment" class action (2)

who was provided with notice of the settlement agreement (3) that she opt out of and that (4) the

terms of the settlement agreement release claims by class members of the very type alleged in

this action.[17]  Brown disputes each of these contentions.  Because the Court agrees with Brown

that Wells Fargo has not proven notice to Brown was sufficient, it confines its analysis to that

issue.

Where a class is certified under Federal Rule of Civil Procedure 23(b)(3), the court must

give class members "the best notice that is practicable under the circumstances," regarding the

specifics of the class action, the member's right to request exclusion from the class, the

procedure for requesting exclusion and the binding effect of a class action judgment on the

members.  *See* Fed. R. Civ. P. 23(c)(2), 23(e).  In addition, when a class action is maintainable

because common questions of law or fact predominate, *see* Fed. R. Civ. P. 23(b)(3), Rule 23

requires that "the court . . . direct to the members of the class the best notice practicable under

the circumstances, including individual notice to all members who can be identified through

---

[17]      Rule 23 of the Federal Rules of Civil Procedure provides that "[o]ne ormore members of a class may sue . . . as representative parties on behalf of all members"provided the four prerequisites of Rule 23(a), numerosity, commonality, typicality, and adequacy, are met. Fed. R. Civ. P. 23(a).  Rule 23(b) provides for three types of class actions, including those based on the court's finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

reasonable efforts." Fed. R. Civ. P. 23(c)(2). "Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "The purpose of rule 23(c)(2) is to afford members of the class due process which, in the context of the rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1991) (citing *Eisen*, 417 U.S. at 173–174). Actual notice is not required. *See id*. However, notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, to substantiate its notice sufficiency argument, Wells Fargo cites the *Wachovia* court's approval of the class action settlement as evidence that notice was sufficient. In the judgement, the court found that notice of the settlement satisfied Rule 23(a) and due process requirements because "[c]lass members received direct notice by United States mail, and additional notice was given by publication on the Internet and in *USA Today*." The court noted that "[t]hese were the best practicable means of informing class members of their rights and of the settlement's terms." *In re Wachovia Corp.*, 2011 WL 1877630, at *3 (citing *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (affirming district court's conclusion that notice by direct mail and publication was best practicable notice)). Wells Fargo contends that this judgment is binding upon Brown. Such an argument cannot prevail on the evidence presented. As Brown points out, the Bank has furnished no facts demonstrating that Brown was mailed the *Wachovia* settlement notice nor has it submitted a copy of the *USA Today* publication. Indeed, it proffers no actual evidence in support of its claim that notice to Brown met Rule 23 and due

process requirements.  Instead, Wells Fargo asks the Court to infer that because Brown is a class

member and because the *Wachovia* court found that class members received notice by direct

mail, notice to her was sufficient.  The Court declines to make such an inference.  The *Wachovia*

court made a summary finding as to over 516,000 class members.  *In re Wachovia Corp*., 2011

WL 1877630,  at *3.  Whether Brown was on the notice mailing list is unclear.  Because the

Bank has the burden to prove this affirmative defense, *Taylor*, 553 U.S. at 907, the mere citation

of the *Wachovia* settlement and suggestion that the Court should infer sufficient notice as to

Brown is not sufficient.[18]  *Cf. Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 2009)

("Where the basis for applying res judicata is . . .[a] purported class action status under Rule 23,

and where it is clear that . . . parties in [the settled action] failed to comply with Rule 23(c)(2)'s

mandate that notice be provided to absent class members, it would defy logic and law to hold

that such putative class members are bound by res judicata."); *Anderson v. John Morrell & Co.*,

830 F.2d 872 (8th Cir. 1987) (retirees seeking wrongfully denied benefits were not bound by a

previous class 23(b)(3) class action where there was no notice to absent class members pursuant

---

[18]    Even if the Court were to take judicial notice of the *USA Today* publication, as the Court did in *Hecht v. United Collection Bureau, Inc.*, 2011 WL 1134245, at *4 (D. Conn. Mar. 25, 2011), it cannot conclude that mere publication is sufficient.  Indeed, the *Wachovia* court found that notice was sufficient because it had been mailed via first class mail to all class members *in addition* to publication.  *In re Wachovia Corp*, 2011 WL 1877630, at *3.  Many courts have found the same mail-publication duo to be "reasonably calculated."  *See generally Peters v. Nat'l R.R. Passenger Corp.*, 966 F. 2d 1483, 1485 (D.C. Cir. 1992).  Only in a narrow set of circumstances, which do not exist here, has mere publication been deemed sufficient. *See, e.g.*, *Herbst v Able*, 47 F.R.D. 11, 18 (S.D.N.Y. 1969) (in a consolidation of five securities fraud class actions, the court held that in regard to the action involving one of the defendants, published notice to the plaintiff class was the best notice practicable under the circumstances, because of the large number of common-stock purchasers and transferees and the extreme difficulty in identifying them for purposes of individual notice); *Biechele v. Norfolk & W. R. Co.*, 309 F. Supp. 354, 360 (D. C. Ohio 1969) (holding that since no list of the potential members of the class in the damage suit was available nor could one have been compiled, the notice required by Rule 23(c)(2) should be given by publication).

to 23(c)(2)); *Jones v. Diamond*, 594 F.2d 997, 1023 (C.A. Miss. 1979) (prisoners could not be precluded from bringing their claims for damages where it was unclear whether or not the judge certified (b)(2) or (b)(3) class and where there was no indication in record that class members were properly notified; "[w]ithout valid notice and an opportunity to opt out of the class, there can be no res judicata effect given to judicial determinations of the claims of unrepresented parties"); *Wright v. Collins*, 766 F.2d 841, 847–48 (4th Cir. 1985) (holding that before class member may be barred from pursuing individual claim for damages, he must have been notified that he was required to adjudicate his damage claims as part of prior class action suit and finding that notice to prisoner class members was inadequate where it failed to explain that participation in class action would preclude subsequent individual damage suit); *Gert v. Elgin*, 773 F.2d 154, 159 (7th Cir. 1985) ("A personal judgment entered without jurisdiction over the person violates due process and is void . . . Notice to (b)(3) class members is an unambiguous requirement for jurisdiction" (citation omitted)).  Therefore, because Wells Fargo has not demonstrated that Brown was mailed notice of the *Wachovia* class settlement, the Court concludes that it is not entitled to the defense of claim preclusion at this stage of the litigation.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Wells Fargo's motion to dismiss should be granted in part and denied in part.  Accordingly, all claims are dismissed with the exception of those alleging affirmative misrepresentation and fraud (i.e. Compl. ¶¶ 2, 12–21, 25–27, 33–36, 52, 111, and the D.C. Code § 28-3904(e) allegation asserted in ¶ 124 of the complaint).  An appropriate Order accompanies this Memorandum Opinion.

Dated: June 22, 2012

BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE